IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEEQUANE ANTHONY MCGOWAN,

                      Plaintiff,

v.

ALANA ACKER and ROBERT WEINMAN,

                      Defendants.

OPINION and ORDER

25-cv-977-jdp

---

Plaintiff Leequane Anthony McGowan, who is incarcerated at Columbia Correctional Institution (CCI), has filed a complaint and a motion for emergency injunctive relief. The main idea of the complaint and emergency motion is that CCI's health services manager, defendant Alana Acker, denied McGowan adequate pain medication for his sickle cell disease, in particular by rejecting a recommendation from University of Wisconsin Hospital Carbone Hematology Clinic (UW Hematology) for the opioid MS Contin. McGowan brings an Eighth Amendment medical care claim.

I gave the Wisconsin Department of Corrections a short time to file a response explaining what is being done to address McGowan's complaints of pain related to sickle cell disease. The DOC filed its response and supporting evidence. McGowan then filed a second motion for emergency injunctive relief, alleging that he's being denied treatment for his pain related to sickle cell disease because he brought this lawsuit. I will screen McGowan's complaint and rule on his emergency motions in this order.

McGowan is incarcerated, so I must screen the complaint under 28 U.S.C. § 1915A and dismiss any part of it that is frivolous or malicious, fails to state a claim for which I could grant relief, or seeks money damages from an immune defendant. I must accept the complaint's

allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the complaint for failure to state a plausible claim for relief. Also, having reviewed the DOC's response and supporting evidence, I will deny McGowan's motions for emergency injunctive relief, because the DOC's submissions show that McGowan's sickle cell disease is being treated.

## SCREENING THE COMPLAINT

### A. Allegations of fact

McGowan has sickle cell disease, a serious blood disorder that causes red blood cells to become sickle-, or C-shaped. McGowan's sickle cell disease causes him two types of pain. The first type is day-to-day pain that is a "direct result" of the condition. Dkt. 1 ¶ 7. The second type of pain is commonly referred to as "sickle cell crisis." *Id.* Sickle cell crisis is generally caused by the clotting of C-shaped red blood cells, which blocks blood flow to organs and tissues. *See id.* ¶¶ 6–7. During sickle cell crises, McGowan experiences an "extraordinary amount of pain." *Id.* ¶ 7. McGowan has been prescribed tramadol and Toradol on an as-needed basis for pain caused by his sickle cell disease.

Providers "have submitted, and were approved, Narcotic Pain Medication Orders" to manage McGowan's day-to-day and crisis pain. *Id.* ¶ 12. Apparently, the "Bureau of Health Service in Madison" approved these orders. *See id.* Each time an order was made, Acker sent McGowan a memo "stating that he [would] not be receiving the medication that he previously was told he would." *Id.* The memos don't specify "who authorized the discontinuation of the narcotic." *Id.*

2

In June 2025, UW Hematology recommended MS Contin for crisis pain. At some point, Acker responded to McGowan's inmate complaint, in which he apparently asked to be prescribed MS Contin consistent with UW Hematology's recommendation. Acker acknowledged the recommendation, but she wrote that MS Contin could not safely be administered. According to McGowan, Acker said that McGowan would most likely divert or otherwise misuse MS Contin.

Since June 2025, McGowan has complained to the health services unit (HSU) about pain dozens of times. These complaints include ten unanswered written requests to be seen. When McGowan is seen, the HSU staff member lacks knowledge of sickle cell disease and cannot prescribe adequate pain medication.

In late October 2025, McGowan wrote Acker, asking her to follow UW Hematology's recommendations. (McGowan doesn't specify these recommendations, but I will infer that he wanted Acker to prescribe MS Contin or another opioid pain medication.) In response, Acker wrote that, in September 2025, an advanced practice nurse prescriber (APNP) "ordered labs" and requested gabapentin for McGowan. *Id.* ¶ 14. A nurse later told McGowan that these orders did not exist.

At some point, Acker responded to a letter that McGowan addressed to the medical director, Dr. Daniel Lavoie. Acker advised McGowan to follow the inmate complaint process, and she failed to address his concerns.

Several times, defendant Weinman has recommended dismissals of McGowan's complaints without investigating medical orders or UW Hematology's recommendations.

3

**B. Analysis**

McGowan brings an Eighth Amendment medical care claim, and he seeks damages and permanent injunctive relief. Specifically, McGowan seeks a court order requiring the DOC to follow the recommendations of UW Hematology, and to implement a comprehensive pain management plan.

To state a medical care claim, McGowan must plausibly allege that he had an objectively serious medical condition that defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). McGowan's day-to-day and crisis pain related to sickle cell disease are a serious medical need. The issue is whether defendants consciously disregarded McGowan's need for adequate pain medication.

Conscious disregard requires that defendants are subjectively aware of that need. *See id.* That means that defendants knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Eighth Amendment doesn't require "specific care" or "the best care possible." *Id.*; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Disagreement between McGowan and defendants, or among medical professionals, about the proper course of treatment isn't enough to show conscious disregard. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard of medical needs. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). If a medical professional has provided some care for a prisoner's condition, she consciously disregards the serious medical need only if her care is so inadequate that it demonstrates an absence of professional judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). The key question is whether the medical professional based her treatment decision on her medical judgment. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021).

1. **Claim against Acker**

I take McGowan to assert four theories of relief against Acker. The first theory is that Acker denied him medical care by interfering with providers' orders for narcotic pain medication. McGowan's relevant allegations are not clearly articulated. McGowan alleges that providers "have submitted, and were approved, Narcotic Pain Medication Orders" to manage his day-to-day and crisis pain. Dkt. 1 ¶ 12. McGowan does not identify these providers, specify the narcotic pain medications that they ordered, provide approximate dates on which the orders were made, or describe the examinations that led the providers to make these orders. McGowan alleges that Acker interfered with these purported orders, but he acknowledges that her memos didn't specify "who authorized the discontinuation of the narcotic," which suggests that Acker was only conveying information to him. *Id.* McGowan hasn't alleged enough facts to plausibly suggest that Acker consciously stopped or otherwise interfered with his receipt of any narcotic pain medication that he had been prescribed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

5

("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). McGowan's first theory does not support a plausible medical care claim.

McGowan's second theory is that Acker denied him MS Contin even though UW Hematology had recommended that pain medication. McGowan bases this theory on Acker's response to his inmate complaint, in which Acker wrote that MS Contin could not be safely administered because McGowan would most likely divert or otherwise misuse that medication. The mere fact that Acker responded to McGowan's inmate complaint does not suggest that Acker herself made the decision to deny MS Contin. Acker is the health services manager and a registered nurse. Dkt. 1 ¶ 2. As a registered nurse, it's implausible that Acker had the authority to decide whether to prescribe MS Contin. In this court's experience, grievance officials often consult with HSU staff to obtain summaries of a prisoner's relevant medical care and explanations for why certain treatment was not provided. *See id.* at 679 ("[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense."). The fact that HSU staff members provide that information does not make them responsible for providers' denials of medications that staff members lack the authority to prescribe. Based on the limited facts alleged, it's implausible that Acker was responsible for the denial of MS Contin. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under [42 U.S.C.] § 1983 . . . requires personal involvement in the alleged constitutional deprivation." (alteration adopted)). McGowan's second theory does not support a plausible medical care claim.

McGowan's third theory is that Acker denied him medical care in her response to his October 2025 correspondence. McGowan alleges that he wanted Acker to prescribe MS Contin

6

or another narcotic pain medication. McGowan suggests that Acker blew off this request because she told him that an APNP had ordered labs and requested gabapentin even though those orders did not exist. But McGowan hasn't alleged any facts plausibly suggesting that Acker realized that those orders did not exist or consciously failed to confirm their existence. At most, McGowan has described a mere mistake by McGowan, which does not violate the Eighth Amendment. *See Berry*, 604 F.3d at 440. McGowan's third theory does not support a plausible medical care claim.

McGowan's fourth theory is that, on an unspecified date, Acker failed to address the concerns that he raised in a letter addressed to Lavoie. But McGowan hasn't described the concerns that he raised in this letter. Without those facts, I cannot plausibly infer that McGowan's response amounted to conscious disregard. *See id.* McGowan's fourth theory does not support a plausible medical care claim.

I will not allow McGowan to proceed on a medical care claim against Acker.

**2. Claim against Weinmann**

McGowan alleges that Weinmann denied him medical care by recommending dismissals of McGowan's complaints without investigating medical orders or UW Hematology's recommendations. But McGowan doesn't describe these complaints or explain how Weinmann failed to investigate the medical orders and UW hematology's recommendations. Without more facts, I cannot plausibly infer that Weinmann consciously denied McGowan medical care. I will not allow McGowan to proceed on a medical care claim against Weinmann.

7

### 3. Other potential claim

McGowan alleges that, since June 2025, he has complained to the HSU about pain dozens of times. These complaints include ten unanswered written requests to be seen. When plaintiff is seen, McGowan adds, the HSU staff lacks knowledge about sickle cell disease and cannot prescribe adequate pain medication.

I take McGowan to assert that HSU staff members are ignoring his complaints for medical care. I will not allow McGowan to proceed on this allegation because he hasn't described these complaints or identified any HSU staff member responsible for disregarding them. *See Iqbal*, 556 U.S. at 678; *Colbert*, 851 F.3d at 657.

McGowan also suggests that HSU staff members have provided him with inadequate treatment for his sickle cell disease and related pain at appointments. I will not allow McGowan to proceed on this allegation because he hasn't described the care provided at these appointments or identified any HSU staff member who provided that care.

### C. Instructions on filing an amended complaint

I will allow McGowan to file an amended complaint that fixes the above pleading problems. In drafting his amended complaint, McGowan should remember to:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in or cause a violation of his constitutional rights. McGowan must take care to allege what each defendant did, or failed to do, to violate his constitutional rights.

- McGowan should avoid referring to several defendants together. For instance, if more than one defendant has taken a particular action that McGowan believes supports a claim, he should identify each defendant who took that action.

8

- Identify by full name all the individuals he wishes to sue in the amended complaint's caption.

- Omit legal arguments other than explaining what types of claims he wishes to assert.

## MOTIONS FOR EMERGENCY INJUNCTIVE RELIEF

**A. Preliminary matters**

After defendants responded to McGowan's emergency motion for injunctive relief, McGowan followed up with a declaration, Dkt. 14, and a second motion for emergency injunctive relief, Dkt. 18. I'll consider the declaration and rule on both motions for injunctive relief.

**B. McGowan's requests for emergency injunctive relief**

In McGowan's first emergency motion, he seeks two forms of relief: (1) an order prohibiting Acker from being involved in his medical care; and (2) an order requiring review of his treatment recommendations, including UW Hematology's, by Lavoie and the DOC's nursing director. Dkt. 4 at 1. In the second emergency motion, McGowan seeks an order prohibiting Acker from being involved in his medical care, "to include using third parties to convey her messages and attempts to have McGowan sign documents that would be contrary to his need for proper medical care." Dkt. 18 at 3. McGowan also seeks orders: (1) prohibiting APNP Zoura from entering orders "contrary" to a UW Hematology report dated December 12, 2025; and (2) sanctioning Acker for denying him medical care. *Id.*

9

**C. Legal standards governing motions for emergency injunctive relief**

McGowan seeks emergency injunctive relief, so he must establish four elements: (1) he is likely to succeed on the merits on his claim; (2) he is likely to suffer irreparable harm if I do not grant him the emergency injunctive relief that he seeks; (3) the balance of equities tips in his favor; and (4) emergency injunctive relief is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Democratic Nat'l Comm. v. Bostelmann*, 447 F. Supp. 3d 757, 765 (W.D. Wis. 2020) (standard to determine whether preliminary injunction is warranted is the same as standard to determine whether temporary restraining order is warranted). McGowan must satisfy each of these elements to obtain emergency injunctive relief. *See Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).

A motion for emergency injunctive relief seeks "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Bevis v. City of Naperville, Ill.*, 85 F.4th 1175, 1188 (7th Cir. 2023) (stating that party seeking preliminary injunction bears burden to show that such relief is warranted). The court cannot grant injunctive relief for claims on which it has not allowed a party to proceed. *Annamalai v. Malcolm*, No. 25-cv-364-jdp, 2025 WL 2322416, at *7 (W.D. Wis. Aug. 12, 2025) (citing *Pritzker*, 973 F.3d at 762).

McGowan's motion does not meet the court's formal requirements for a motion for preliminary relief, which require the moving party to submit proposed findings of fact supported by admissible evidence. However, in cases in which a prisoner makes a potentially credible claim of imminent harm from a lack of medical care, the court will overlook the formal shortcomings of the pleadings and request an expedited informal response from the DOC. I've

taken that approach here, Dkt. 5, and I'll decide the emergency motions on the basis of the abbreviated record before me. If the case continues past screening, my decision on the emergency motions would not preclude McGowan from securing injunctive relief on the basis of a more fully developed evidentiary record.

## D. Analysis

The main idea of the complaint and first emergency motion is that Acker has denied McGowan adequate pain management for his sickle cell disease, in particular by refusing to follow UW Hematology's recommendation for MS Contin. Again, the Eighth Amendment requires only adequate medical care, not specific care or the best care possible. Disagreement between McGowan and defendants, or among medical professionals, about the proper course of treatment isn't enough to show conscious disregard. As a general rule, a prison provider need not follow the recommendation of an outside specialist if the provider gives a medical reason for her decision. *See Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018); *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018).

The DOC's response and supporting evidence show that McGowan is receiving adequate care for his pain related to sickle cell disease. Acker says that McGowan's sickle cell treatment plain includes preventative treatment, including prescriptions for hydroxyurea, folic acid, and over-the-counter pain medication. Dkt. 10 ¶ 32. Acker explains that hydroxyurea and folic acid, along with proper hydration, are the most important aspects of treating sickle cell disease "as they help prevent crisis from occurring." *Id.* ¶ 14. Acker also says that nurses are currently offering McGowan tramadol (an opioid pain medication) twice daily, and Xarelto (a blood thinner) in the evening. *Id.* ¶ 34. But, according to Acker, McGowan often fails to take his medication in accordance with his treatment plan. *See id.* ¶¶ 33, 35, 42.

Medical staff have also considered UW Hematology's recommendation for MS Contin. Acker notes that, in 2024, UW Hematology recommended MS Contin for McGowan's crisis pain, "depending on ability to monitor and ensure safe administration and avoid overdose and diversion." *Id.* ¶ 43. Acker says that, in August 2024, the DOC briefly approved MS Contin for McGowan, but only in crushed form due to his history of misusing medication. *Id.* ¶ 44. The evidence is that, since 2020, McGowan has received at least eight incident and conduct reports for medication misuse or drug diversion, including tramadol, suboxone (opioid), oxycodone (opioid), and hydroxyurea. *Id.* ¶ 23; *see also* Dkt. 11. Before McGowan received MS Contin, however, the DOC rescinded the approval because MS Contin is an extended-release medication that could not be administered in crushed form. Dkt. 10 ¶ 44.

The DOC's response indicates that McGowan has been prescribed several medications and treatments to control his day-to-day and crisis pain related to sickle cell disease. Some of these medications and treatments don't treat McGowan's pain directly, but they are first-line interventions that help manage McGowan's pain and prevent sickle cell crisis. *See id.* ¶¶ 14, 42. McGowan appears to bear some responsibility for any lack of effectiveness of these treatments because there's evidence that he has failed to comply with his treatment plan. DOC denied McGowan his pain medication of choice, MS Contin, but it gave a medical reason for that decision, and that reason is corroborated by McGowan's documented history of medication diversion and misuse. Any disagreement by McGowan or UW Hematology specialists with McGowan's treatment plan alone doesn't show conscious disregard of his need for adequate pain medication. McGowan hasn't shown a reasonable likelihood of success on the merits of his medical care claim.

12

McGowan previously brought an Eighth Amendment medical care claim against Nurse Practitioner Sandra McArdle at his former prison, Wisconsin Secure Program Facility, based on substantially similar allegations. *See McGowan v. McArdle*, No. 19-cv-978-jdp, 2021 WL 2117165, at *1–3 (W.D. Wis. May 25, 2021). I granted McArdle's motion for summary judgment, concluding that the evidence didn't support McGowan's claim that McArdle refused to provide him with effective pain medication. *Id.* at *4. I explained that it was "well established that medical staff are entitled to deference when choosing an appropriate pain reliever," and that McArdle could be hesitant to prescribe narcotics because they "impose heightened risks of abuse and addiction." *Id.* I also noted that McGowan "did not comply with McArdle's treatment plan" because he failed to "take his over-the-counter pain medication on a consistent basis[.] . . and . . . refused his other medications that were intended to prevent sickle cell crises and proactively treat his condition." *Id.* This case presents strikingly similar facts and circumstances. The prior case doesn't have any preclusive effect on this one, but it buttresses my conclusion that McGowan hasn't shown a reasonable likelihood of success on the merits here.

That leaves McGowan's second emergency motion. McGowan alleges that, in December 2025, Acker and APNP Zoura denied him medical care to retaliate against him because he brought this lawsuit. McGowan asserts new medical care and retaliation claims based on new allegations against Acker and Zoura, who is not named as a defendant in the complaint. I will deny the second emergency motion because it lacks an adequate relationship with McGowan's claims in the complaint, which he bases on different acts and omissions. McGowan can clarify his claims for relief, the facts supporting them, and the defendants against whom he seeks relief in an amended complaint.

13

ORDER

IT IS ORDERED that:

1. Plaintiff Leequane Anthony McGowan's complaint, Dkt. 1, is DISMISSED for failure to state a claim.

2. Plaintiff may have until February 17, 2026, to submit an amended complaint that corrects the above deficiencies.

3. Plaintiff must file his amended complaint on the court's prisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely. If plaintiff requires any additional space to allege his claims, he may submit no more than five supplemental pages. Any text on the form or a supplemental page must be large enough and have enough spacing between lines and in the margins for the court to read it easily. The typewritten pages that plaintiff submitted with his complaint meet this requirement.

4. The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint, and against only the defendants specifically named in the amended complaint's caption.

5. If plaintiff fails to comply with this order, I may dismiss the case.

6. Plaintiff must inform the court of any new address. If he fails to do this and defendants or the court cannot locate him, this case may be dismissed.

7. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

8. Plaintiff's motion to provide sworn declaration, Dkt. 14, is GRANTED.

9. Plaintiff's motions for emergency injunctive relief, Dkt. 4 and Dkt. 18, are DENIED.

10. The clerk of court is directed to send plaintiff a copy of the court's prisoner complaint form.

Entered January 16, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge