IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEEQUANE ANTHONY MCGOWAN,

　　　　　　　　Plaintiff,

　　v.

ALANA ACKER, ROBERT WEINMAN, APNP
ZOURE, DANIEL LAVOIE, and ADVANCED CARE
PROVIDERS,

　　　　　　　　Defendants.

OPINION and ORDER

25-cv-977-jdp

---

In response to my first screening order, McGowan brings an amended complaint in which he alleges that medical staff at Columbia Correctional Institution has denied him medical care for his sickle cell disease and retaliated against him because he filed a related lawsuit. Dkt. 27. I had dismissed McGowan's similar original complaint based on failure to state a plausible claim for relief and provided him him instructions on how to file an amended complaint to fix that problem.

I will screen the amended complaint, as I did the original complaint, pursuant to 28 U.S.C. § 1915A. Dkt. 21 at 1–2. Even though he received leave to amend, McGowan has again failed to state a plausible claim for relief. This time I will dismiss the amended complaint without leave to amend, and I will assess a strike under 28 U.S.C. § 1915(g).

BACKGROUND

McGowan initially brought a complaint and an emergency motion for injunctive relief. Dkt. 1; Dkt. 4; Dkt. 18. The main idea of both submissions was that the health services manager at Columbia Correctional Institution (CCI), defendant Alana Acker, denied

McGowan adequate pain management for sickle cell disease, in particular by rejecting a recommendation from University of Wisconsin Carbone Hematology Clinic (UW Hematology) for the opioid MS Contin. *See* Dkt. 21 at 11 (court's summary of McGowan's allegations). In denying the emergency motion, I noted that McGowan had previously brought a lawsuit presenting "strikingly similar facts and circumstances" that was ultimately unsuccessful. *Id.* at 13. I noted that the prior lawsuit did not have preclusive effect, but it buttressed my conclusion that McGowan had failed to show a reasonable likelihood of success on the merits.

ALLEGATIONS OF FACT

The amended complaint describes the same serious medical need that McGown alleged in the original complaint. McGowan has sickle cell disease, a serious blood disorder that causes red blood cells to become sickle- or C-shaped. McGowan experiences severe pain from this condition, both on a day-to-day basis and as a result of "crisis situations." Dkt. 27 at 4. Sickle cell crisis is caused by the clotting of C-shaped red blood cells. *See id.* McGowan also experiences sickle cell anemia, which is caused by the premature death of his sickle cells. *Id.*

McGowan also alleges new facts and adds new defendants in the amended complaint. The main new point is that Acker has falsified records to deny McGowan treatment for his sickle cell disease. But his new allegations are, once again, sparse and generalized.

## A. Allegations against defendant Alana Acker

Acker falsified records to try to show that McGowan failed to comply with his treatment plan. Acker committed this conduct to create a justification to deny McGowan care. Acker

made false statements to the institution complaint examiner to try to "block" McGowan's attempts to obtain adequate medical care. Dkt. 27 at 5.

Acker interfered with McGowan's medical care by interrupting appointments with providers and "confronting" him about litigation that he is pursuing based on her actions. *Id.*

Acker interfered with McGowan's medical care by providing false information about his "history" so that medications "crucial" to his care would be discontinued. *Id.*

**B. Allegations against defendant Robert Weinman**

Weinman is currently the assistant director of nursing, but he was the temporary HSU manager when at least some of the events occurred. Weinman was the reviewing authority for McGowan's related grievances.

Weinman failed to investigate Acker even though McGowan "provided evidence of such" to the institution complaint examiner, who gave that information to Weinman. *Id.*

Weinman failed to seek review of McGowan's treatment plans even though he had worked with McGowan knew his "serious medical needs and treatment needs." *Id.*

**C. Allegations against defendant APNP Zoure**

Zoure is an advanced care provider at CCI.[1] Zoure denied McGowan medical care by withdrawing: (1) medications, prescriptions, and narcotic requests; and (2) inquiries at Acker's direction, knowing that her direction "was indifferent" to McGowan's care. *Id.*

---

[1] Zoure is identified in the caption as APNP Zoure. "APNP" is an abbreviation for "advanced practice nurse prescriber" but, apart from the amended complaint's caption, McGown refers to Zoure as an "advanced care provider."

Zoure drafted memos to McGowan that knowingly contained false information, and that contained information "contrary to" what was stated at McGowan's appointments. *Id.* at 6.

Zoure discontinued medications to retaliate against McGowan based on litigation of which McGowan informed him.

Zoure disregarded the recommendations of offsite providers at "UW–Madison Hospital." *Id.* (It's clear from amended complaint that "UW–Madison Hospital," "UW–Madison," and "UW–Hematology" refer to the same entity.)

### D. Allegations against defendant Dr. Daniel Lavoie

Lavoie is the DOC's medical director. Lavoie failed to intervene in McGowan's medication reviews, "wherein he had approved, and then removed" at Acker's direction. *Id.*

### E. Allegation against the John Doe Advanced Care Providers

The Doe providers signed "many memos, requests, and forms." *Id.*

### F. Allegations of continuing harm

McGowan continues to be denied: (1) proper pain relief, as recommended by staff at UW–Madison; (2) regular and proper laboratory testing and evaluation of his sickle cell disease; and (3) an "accurate treatment plan" that reflects his current medication needs and "emergency intervention plans." *Id.* at 7.

ANALYSIS

I take McGowan to bring Eighth Amendment medical care and First Amendment retaliation claims. McGowan seeks damages and an order requiring the DOC "follow the reasonable recommendations of off-site providers at UW–Hematology." *Id.*

4

## A. General pleading problem

I begin with some general remarks about pleading. Federal Rule of Civil Procedure 8(a) requires a pleading to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The primary purpose of Rule 8(a) is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (alteration adopted). This standard does not require "detailed factual allegations," but "naked assertions devoid of further factual enhancement" are not enough. *See Iqbal*, 556 U.S. at 678. A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The amended complaint provides only a high-level summary of denials of medical care and purported retaliation. McGowan mostly fails to identify the specific acts or omissions that the denials of medical care and retaliation involved, and he compounds the absence of facts by omitting reasonable date ranges for this conduct. As presented, I cannot plausibly infer that any defendant violated McGowan's federal rights. I would not allow McGowan to proceed on the amended complaint for this reason alone.

## B. Specific pleading problems

The amended complaint also has problems more specific to McGowan's allegations and theories of relief.

### 1. Medical care claims

To state a medical care claim, McGowan must plausibly allege that he had an objectively serious medical condition that defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). McGowan's sickle cell disease, including his related day-to-day and crisis pain, is a serious medical need. The issue is whether McGowan has plausibly alleged that defendants consciously disregarded this need.

Conscious disregard requires that defendants are subjectively aware of that need. *See id.* That means that defendants knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional conduct, or reckless conduct "so dangerous that the deliberate nature of the defendant's actions can be inferred." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The Supreme Court has compared the conscious disregard standard to criminal recklessness. *See Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015). Negligence, even gross negligence, does not violate the Eighth Amendment. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Eighth Amendment doesn't require "specific care" or "the best care possible." *Id.*; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Mere disagreement between McGowan and defendants, or among medical professionals, about the proper course of treatment isn't enough to show conscious disregard. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

6

Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard of medical needs. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). If a medical professional has provided some care for a prisoner's condition, she consciously disregards the serious medical need only if her care is so inadequate that it demonstrates an absence of professional judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). The key question is whether the medical professional based her treatment decision on her medical judgment. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021).

### a. Claim against Acker

McGowan alleges that Acker falsified his medical records to deny him medical care. The falsification of medical records, by itself, does not violate the Constitution. *Moreland v. Bryant*, No. 22-cv-679-jdp, 2023 WL 3950114, at *2 (W.D. Wis. June 12, 2023); *see also Burton*, 805 F.3d at 784 (a mere mistake does not show conscious disregard). Without details about the falsification, I cannot plausibly infer that McGowan committed that conduct with the intent to deny him medical care, or with reckless disregard of that result. The obvious more plausible explanation is that Acker and other prison officials declined to follow the recommendation for a powerful opioid to manage McGowan's pain, a decision that would be well justified for medical reasons and on prison policy grounds.

Similarly, McGowan alleges that Acker made false statements to block his attempts to grieve his lack of medical care. But without details about what Acker did to frustrate McGowan's attempts to grieve his concerns, I cannot plausibly infer that Acker committed that

conduct intending to stop McGowan from obtaining medical care, or with reckless disregard of that result.

McGowan alleges that Acker "deliberately and willfully" interfered with his medical care by interrupting his appointments with providers and "confronting" him about related litigation against her. Dkt. 27 at 5. Without details about what the interference and confrontation involved, I cannot plausibly infer that Acker committed this conduct with the intent to deny McGowan medical care, or with reckless disregard of that result. McGowan expressly alleges that Acker's actions were deliberate and willful but, without more facts, this allegation amounts to a legal conclusion. *See Iqbal*, 556 U.S. at 678 (stating that courts are not bound to accept as true a legal conclusion couched as a factual allegation while deciding whether a complaint states a plausible claim for relief).

McGowan alleges that Acker has "deliberately" and "willfully" interfered with his medical care by providing false information about his "history" to have medications "crucial" to his care discontinued. Dkt. 27 at 5. Without details about the false information entailed and other circumstances, I cannot plausibly infer that Acker committed this conduct with the intent to deny McGowan any necessary care, or with reckless disregard of that result. The mere labels "deliberately" and "willful" don't suggest otherwise. *See Iqbal*, 556 U.S. at 678. I will not allow McGowan to proceed against Acker on his medical care claim.

### b. Claim against Weinman

McGowan alleges that Weinman, the reviewing authority, failed to investigate McGowan's allegations against Acker even though McGowan "provided evidence of such" to the institution complaint examiner, who gave that information to Weinman. Dkt. 27 at 5. But, as explained above, McGowan has not stated a viable medical care claim against Acker. So it's

implausible that Weinman's failure to investigate Acker contributed to any denial of medical care by Acker. Besides, without details about what information the institution complaint examiner gave Weinman, I cannot plausibly infer that Weinman's failure to investigate that information was conscious disregard of McGowan's medical needs.

McGowan alleges that Weinman "deliberately" and "willfully" failed to seek review of his treatment plans even though Weinman had worked with McGowan and knew his treatment needs. It's questionable whether Weinman, as a nurse, would have had the authority to review McGowan's treatment plans, which providers presumably implemented. *See Pulera v. Sarzant*, 966 F.3d 540, 553 (7th Cir. 2020) (nurses entitled to defer to doctor's medical judgment). But even if Weinman had that authority, without details about how Weinman failed to seek review of McGowan's treatment plans, and about what Weinman knew about his medical needs, I cannot plausibly infer that Weinman consciously disregarded those needs. The mere labels "deliberate" and "willful" do not suggest otherwise. I will not allow McGowan to proceed on a medical care claim against Weinman.

### 2. Claim against APNP Zoure

McGowan alleges that Zoure has "deliberately and willfully" denied him medical care by withdrawing: (1) medications, prescriptions, and narcotic requests; and (2) inquiries at Acker's direction, knowing that her direction "was indifferent" to McGowan's care. Dkt. 27 at 5. Zoure's alleged withdrawal of McGowan's medications and denial of his requests for narcotic medication, without more, wouldn't show conscious disregard. The issue is whether Zoure based these decisions on her medical judgment. McGowan has not alleged any facts plausibly suggesting that she failed meet that standard. McGowan's second allegation, about the withdrawal of his inquiries, is not clearly articulated and amounts to a legal conclusion.

McGowan alleges Zoure "deliberately" and "willfully" drafted memos to McGowan that "knowingly" contain false information, and that contain information "contrary to" what was stated at McGowan's appointments. *Id.* at 6. Without details about the content of the memos and what information was conveyed at the appointments, I cannot plausibly infer that this conduct was conscious disregard of his medical needs. Again, the labels "deliberate" and "willful" don't suggest otherwise.

McGowan alleges that Zoure has "deliberately" and "willfully" discontinued medications to retaliate against him based on litigation of which he informed him. *Id.* But McGowan does not allege what medications Zoure discontinued, when Zoure discontinued them, when he informed Zoure of his litigation, the specific content of that communication, or any other facts related to the communication or discontinuance. Without details, I cannot plausibly infer that Zoure discontinued McGowan's medications for a non-medical reason.

McGowan alleges that Zoure "deliberately" and "willfully" disregarded the recommendations of offsite providers at UW Hematology. But the basic rule is that a provider need not follow the recommendation of an outside specialist if the provider gives a medical reason for her decision. *See Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018); *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). McGowan hasn't alleged any facts plausibly suggesting that Zoure failed to follow the recommendations of the offsite providers for a non-medical reason. Zoure's mere disagreement with the offsite specialists' medical judgment does not state a medical care claim. I will not allow McGowan to proceed on a medical care claim against Zoure.

### 3. Allegations against Dr. Lavoie

McGowan alleges that Lavoie "deliberately" and "willfully" failed to intervene in his medication reviews, "wherein he had approved, and then removed" at Acker's direction. Dkt. 27 at 6. This allegation is not clearly articulated. I cannot plausibly infer from this bare allegation that Lavoie intentionally or recklessly failed to intervene in McGowan's medication reviews, thus denying him necessary medical care. I will not allow McGowan to proceed on a medical care claim against Lavoie.

### 4. Allegations against Doe advanced care providers

McGowan alleges that the Doe providers signed "many memos, requests, and forms." *Id.* This bare allegation doesn't plausibly suggest that any Doe provider consciously disregarded McGowan's medical needs. I will not allow McGowan to proceed on a medical care claim against the Doe providers.

## C. Retaliation claims

To state a retaliation claim, McGowan must plausibly allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was at least a motivating factor in the decision to take the retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The basic rule is that the First Amendment protects a prisoner's right to file nonfrivolous civil rights lawsuits. *See id.* at 551, 553; *Harris v. Walls*, 604 F. App'x 518, 521 (7th Cir. 2015).

I take McGowan to bring two retaliation claims. First, McGowan suggests that Acker retaliated against him by interfering with his medical care and "confronting" him about related litigation against her. *See* Dkt. 27 at 5. But without details about what this interference and

confrontation involved, I cannot plausibly infer that Acker committed this conduct because of McGowan's litigation. Also, because McGowan doesn't describe the interference, I cannot plausibly infer that this conduct would likely deter future First Amendment activity. I will not allow McGowan to proceed on a retaliation claim against Acker.

Second, McGowan alleges that Zoure discontinued medications to retaliate against him based on litigation of which he informed him. But McGowan doesn't allege what medications Zoure discontinued, when Zoure discontinued them, when he informed Zoure of his litigation, any details of that communication, or any other facts related to the communication or discontinuance. McGowan's bare allegation that Zoure discontinued his medications because of his litigation doesn't support a plausible inference of retaliation. I will not allow McGowan to proceed on a retaliation claim against Zoure.

## D. Request for injunctive relief

McGowan seeks an order requiring the DOC "follow the reasonable recommendations of off-site providers at UW–Hematology." Dkt. 27 at 7. The basic rule is that injunctive relief is proper only if there is a continuing violation of federal law. *Kress v. CCA of Tennessee, LLC*, 694 F.3d 890, 894 (7th Cir. 2012).

McGowan alleges that he continues to be denied: (1) proper pain relief, as recommended by staff at UW Hematology; (2) regular and proper laboratory testing and evaluation of his sickle cell disease; and (3) an "accurate treatment plan" that reflects his current medication needs and "emergency intervention plans." Dkt. 27 at 6. These allegations mostly summarize McGowan's already highly generalized allegations. Like the other allegations in the amended complaint, the allegations of continuing harm are too sparse and vague to

plausibly suggest that McGowan is currently being denied necessary medical care. I will not allow McGowan to proceed on any request for injunctive relief.

CONCLUSION

When a plaintiff proceeds without counsel, the court of appeals has cautioned against dismissing his case without giving him a chance to amend the complaint. *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016). But leave to amend doesn't have to be granted if it's clear that further amendment would be futile. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013).

In my first screening order, I explained to McGowan why the original complaint failed to state a plausible claim for relief, and I gave him the opportunity to fix the problems. McGowan's amended complaint adds the implausible allegation that Acker has falsified records to prevent McGowan from receiving treatment. But McGowan fails to provide details about this falsification, or the retaliation he alleges. His allegations are even more generalized than before. The only plausible inference is that McGowan wants the opioid pain medication prescribed by outside providers, but that for prison policy reasons the providers at his institution decline to provide that specific pain medication. McGowan has not stated a federal constitutional claim.

It's clear in the circumstances that further amendment would be futile, so I will dismiss the amended complaint without leave to amend. I will also impose a strike under 28 U.S.C. § 1915(g).

13

ORDER

IT IS ORDERED that:

1. Plaintiff Leequane Anthony McGowan's amended complaint, Dkt. 27, is DISMISSED without leave to amend based on failure to state a plausible claim for relief.

2. A strike is to be recorded against plaintiff under 28 U.S.C. § 1915(g).

3. The clerk of court is directed to enter judgment and close the case.

Entered May 18, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge